UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

ADE BROWN,

        Plaintiff,                  Case No. 1:18-cv-1322

v.                                    Honorable Robert J. Jonker

SABRINA DAVIS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss all claims and defendants other than the retaliation claim against Defendants Davids and Davis.

### **Discussion**

    I.    <u>Factual allegations</u>

Plaintiff Ade Brown is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues the following MDOC employees, all of whom worked at ICF during the time period alleged in the complaint: former Warden Willie Smith; Warden John Davids; former Deputy Warden John Christiansan; Deputy Wardens Unknown Schiebner and Gary Miniard; Assistant Deputy Warden (ADW) Phyllis Clemens; Resident Unit Managers (RUMs) Sabrina Davis and Unknown Larsen; Inspector Unknown Barber; Prisoner Counselors (PC) Lloyd Thurlby, Unknown Luther, Heather Matthews, and Molly McQuiston; and mailroom staff members Unknown Karber and D. Christiansan.

Plaintiff's complaint concerns his inability to make telephone calls or send and receive electronic messages for over two years, from March 2016 to August 2018. During that time period, Plaintiff was serving sanctions for prison misconduct convictions. These sanctions deprived him of certain privileges. Also, from September 2015 to October 2017, he was confined in administrative segregation.

According to his MDOC record, Plaintiff assaulted a prison employee on February 20, 2016.[1] Plaintiff alleges that he transferred to ICF in March 2016. Before his transfer, he was able to make telephone calls and to use his J-Pay account for sending and receiving e-mails. When he arrived at ICF, however, he was placed in administrative segregation and his phone account and J-Pay account (now known as "GTL") were deactivated. Without a working phone account, he was not able to make telephone calls to his family. Without a working J-Pay account, he was not able to use the prison kiosk to communicate with his family via electronic messages. He was told that he would need to reach "Stage 4" of an "incentive program" to reactivate his accounts. (Compl., ECF No. 1, PageID.5.)

---

[1] *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=884273 (visited December 17, 2018). In February 2018, Plaintiff pleaded guilty to a criminal offense for this assault. *Id.*

Plaintiff alleges that Defendants Miniard, Shiebner, Davis, and Davids gave the mail room staff at ICF (i.e., Defendants Clement, D. Christiansan, and Karber) the ability to deactivate the J-Pay/GTL account of prisoners, like Plaintiff, who are on LOP status. Thus, Plaintiff contends that these defendants are responsible for the deactivation of his J-Pay/GTL account.

Plaintiff allegedly reached "Stage 4" in May 2016, but when he went to make a telephone call, his pin code would not work. Plaintiff asked PC Thurlby about the issue, but Thurlby did not have an answer. After repeated attempts to make telephone calls, Plaintiff became depressed and went on suicide watch for a period of time, which put him back to Stage 2.

Plaintiff was released from suicide watch in July and made it back to Stage 4 in August or September. Still, his pin code would not work. Plaintiff spoke with Thurlby about the issue. Thurlby gave Plaintiff a new pin code, but Plaintiff was still unable to make telephone calls. Thurlby told Plaintiff he did not have authority to reactivate Plaintiff's phone account.

Plaintiff sent kites about his phone account to Defendants Larsen, Smith, J. Christiansan, Schiebner, Miniard, and Barber. They never responded, and Plaintiff's phone account remained deactivated. Several officials subsequently informed Plaintiff that his phone account was deactivated because of his "LOP" status. LOP is an acronym for loss of privileges. It is a specific sanction issued to prisoners for misconduct. *See* MDOC Policy Directive 03.03.105, Attach. E. According to MDOC policy, prisoners sanctioned with loss of privileges are not permitted to, among other things, use the TV room and exercise facilities, participate in out-of-cell hobbycraft activities, attend group meetings, make telephone calls ("except calls to the Office of Legislative Corrections Ombudsman and . . . return calls from an attorney at the request of the attorney"), or use the kiosks for sending and receiving electronic messages. *Id.* Plaintiff

3

acknowledges that he was given LOP sanctions, but he believes that he was entitled to a 7-day break from loss of privileges once every 30 days under MDOC policy. He never received a break that gave him access to the telephone and kiosk.

In May 2018, PC Luther told Plaintiff that he could apply for a LOP "waiver" if he went for 90 days without a misconduct ticket. (Compl., PageID.9.) If his waiver was approved, then he would be able to make telephone calls for 30 days, but there was no guarantee that he would receive a waiver.

Plaintiff's accounts were finally reactivated in August 2018, after Warden Davids and RUM Davis approved Plaintiff's application a 30-day LOP waiver. They approved another waiver in September 2018. However, the following month, they did not approve his waiver request. At the beginning of November 2018, Plaintiff lost his phone and kiosk privileges again. PC McQuiston told him that Defendants Davids and Davis would not approve any more of his LOP waiver requests. Plaintiff alleges that it has been 7 months since he received a misconduct ticket. He believes that Defendants Davids and Davis stopped issuing him waivers because he served a lawsuit on them in September 2018.

Based on the foregoing, Plaintiff believes that Defendants have unlawfully discriminated against him, retaliated against him, deprived him of his First Amendment rights to free speech and association, subjected him to cruel and unusual punishment, and deprived him of due process and his right of access to the courts.

Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. First Amendment

Plaintiff contends that Defendants are responsible for creating and implementing a policy that restricts a prisoner's ability to use the telephone and to access the electronic-messaging kiosk while they are on LOP status. Plaintiff's allegations are supported by the MDOC's publicly-available policies. MDOC Policy Directive 03.03.105, Attachment E, expressly provides that the privileges lost in connection with LOP status include the ability to use the telephone and to use the kiosk. Similar restrictions presumably apply to prisoners confined in segregation, because the MDOC policy for prisoners in segregation allows telephone privileges only for the following situations: "for verified serious family emergencies," for "communicating with the Office of the Legislative Corrections Ombudsman," and for "communicating with an attorney . . . upon request of the attorney[.]" MDOC Policy Directive 04.05.120 ¶ V(19) (Sept. 27, 2010). Plaintiff asserts that these restrictions impaired his ability to communicate with his family, depriving him of his rights to freedom of speech and association under the First Amendment.

"[P]ersons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends[.]" *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)) However, that right is not unlimited. *See id.* ("[A]n inmate has no right to unlimited telephone use."). Indeed, "a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Id.* (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986)). In other words, an institution may place limits on prisoner contact with family and friends if such limits "bear a rational relationship to legitimate penological

6

interests," such as rehabilitation and the maintenance of security and order. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (withdrawing visitation privileges for a period of time to effect prison discipline is not a dramatic departure from accepted standards for conditions of confinement).

To determine whether a regulation or practice limiting a prisoner's speech or association rights is reasonably related to a legitimate penological interest, the Court must look at the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Here, Plaintiff alleges that he did not have access to a telephone or to prison electronic messaging system for over two years because he was on LOP status and, for at least part of that time, he was confined in segregation. Both types of restrictions are used by the MDOC to discipline and rehabilitate prisoners. The need for discipline and rehabilitation is particularly evident in Plaintiff's case. He assaulted a prison official in February 2016, the month before the restrictions took effect. And Plaintiff himself asserts that his confinement in segregation was due to "behavior issues," which he blames on various mental illnesses. (Compl., PageID.12.) He also acknowledges that he "caught a lot of LOP" for "misconducts." (*Id.*) As a number of courts have held, restricting a prisoner's telephone access for disciplinary reasons does not violate a prisoner's First Amendment rights. *See, e.g.*, *Al-Jabbar a'La v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 (6th Cir. May 19, 1992) (reasonable restrictions on telephone use do not implicate the loss of a

7

First Amendment right); *Almahdi v. Ashcroft*, 301 F. App'x 519, 521-22 (3d Cir. 2009) (prison's restriction of inmate to one phone call per month as a disciplinary sanction did not violate the First Amendment). Plaintiff has not alleged facts indicating that the loss of his telephone and e-mail privileges are unrelated to legitimate penological interests.

Moreover, Plaintiff does not allege that there was no alternative means of communicating with his family, such as communication by letter. Plaintiff broadly alleges that prisoner staff "interfered" with a "[a]lot" of his incoming regular mail, and that "all" of his outgoing "postal mail" was "being threw [sic] out." (*Id.*, PageID.16.) But he provides no specific factual support for these vague and sweeping assertions. Moreover, contrary to his allegations, the public record conclusively demonstrates that prison officials have not blocked all of his mail. During the period at issue in the complaint (August 2016 to December 2018), Plaintiff filed 10 lawsuits in this Court, including the instant case. *See Brown v. Perez et al.*, No. 1:16-cv-968 (W.D. Mich.); *Brown v. Perry et al.*, No. 1:16-cv-1117 (W.D. Mich.); *Brown v. Smith et al.*, No. 1:17-cv-282 (W.D. Mich.); *Brown v. Lewis et al.*, No. 1:18-cv-347 (W.D. Mich.); *Brown v. Greenfield et al.*, No. 1:18-cv-369 (W.D. Mich.); *Brown v. Conklin et al.*, No. 1:18-cv-554 (W.D. Mich.); *Brown v. Davis et al.*, No. 1:18-cv-812 (W.D. Mich.); *Brown v. Smith et al.*, No. 1:18-cv-1147 (W.D. Mich.); *Brown v. Davis et al.*, No. 1:18-cv-1362 (W.D. Mich.). And in many of these cases, Plaintiff filed motions in response to the Court's orders. None of this would have been possible if the prison was hindering his mail as he alleges. In other words, Plaintiff is clearly able to communicate with the Court by letter. There is no reason to believe that he cannot do the same with his family.

In light of the alternative means of communication available to Plaintiff, namely written correspondence, the sanctions imposed on Plaintiff in response to his disciplinary

8

infractions and behavioral problems do not violate his First Amendment rights. *Cf. Pruitt v. Ford*, No. 17-1134-JDT-CGC, 2018 WL 4059491, at *3 (W.D. Tenn. Aug. 24, 2018) (denial of access to telephone for two months due to placement in segregation is not a First Amendment violation); *Smith v. Weers*, No. 1:15-CV-42, 2015 WL 6738668, at *5 (W.D. Mich. Nov. 4, 2015) (30-day telephone restriction is not a First Amendment violation), *aff'd in relevant part*, 2018 WL 2087122, at *2 (6th Cir. Jan. 2, 2018); *Schuh v. Mich. Dep't of Corr.*, No. 1:09-CV-982, 2011 WL 4529641, at *9 (W.D. Mich. Sept. 30, 2011) (finding no First Amendment violation where prisoner unable to make phone calls while confined in administrative segregation for eleven months).

IV. Eighth Amendment

In addition, the denial of access to the telephone and the kiosk did not violate the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Depriving Plaintiff of access to various means of communicating with his family did not inflict pain on him or deprive him essentials like food, medical care, or sanitation. These restrictions may have been emotionally difficult to bear, but they are not the sort of punishments prohibited by the Eighth Amendment. *See Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017) ("Temporary loss of privileges and confinement in segregation—without any allegations that basic human needs were not met—cannot establish an Eighth Amendment claim.").

V. Due Process

Plaintiff claims that depriving him of phone and kiosk privileges without notice and a hearing deprived him of due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff does not state a claim because he does not allege that he was deprived of a protected liberty or property interest.

The Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a sanction or deprivation "will inevitably affect the duration of his sentence," or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). In *Sandin*, the Supreme Court

concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484.

Plaintiff does not allege that the restrictions imposed on him will affect the duration of his sentence. Moreover, they did not impose an atypical and significant hardship. The Sixth Circuit has held that confinement in segregation (which includes, but is more restrictive than, the loss of phone and kiosk privileges) for several months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held that confinement in segregation for much longer periods of time does not implicate a liberty interest, particularly where the confinement is related to significant disciplinary or security concerns. *See, e.g.*, *Jones v. Baker,* 155 F.3d 810, 812-23 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Here, Plaintiff acknowledges that he received LOP sanctions for multiple misconducts, resulting in LOP status for over two years. A short-term LOP sanction for a single misconduct is not an atypical and significant hardship. *See Alexander*, 2017 WL 7050641, at *3 (30 days' loss of privileges for a single misconduct charge is not an atypical and significant

hardship). By extension, the same is true here, where the prisoner lost privileges for a longer period of time due to an accumulation of LOP sanctions for multiple misconducts. Thus, there is no protected interest at stake. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

Moreover, Plaintiff's due process claim is flawed because it seems to be based on a misunderstanding of MDOC policy. Plaintiff contends that he was entitled to notice that his telephone privileges would be deactivated, but MDOC policy clearly provides that a LOP sanction includes the loss of telephone and kiosk privileges, unless otherwise specified by the hearing officer issuing the sanction. Thus, the policy provided him notice of the consequences of his LOP sanctions.

Plaintiff also believes that he was entitled to a "break" in LOP status every 30 days, but there is no support for that belief in the policies he cites in the complaint. There is a policy provision providing that prisoners in segregation or on LOP status for more than 30 days must receive a 7-day break to access the prison yard for one hour per day. *See* MDOC Policy Directive 03.03.105 ¶ QQQ.[2] However, that provision says nothing about use of the telephones or the kiosk. It only refers to use of the prison yard. The 7-day yard break is also mentioned in the segregation policy, but that policy says nothing about the restoration of telephone or kiosk privileges during the break. It only refers to the opportunity for out-of-cell exercise. *See* MDOC Policy Directive 04.05.120 ¶ V(21) (Sept. 27, 2010).

---

[2] The most recent version of this policy, which became effective July 1, 2018, is available on the MDOC's website. *See* https://www.michigan.gov/documents/corrections/03_03_105_626671_7.pdf.

Plaintiff alleges that an older version of the MDOC's policies allowed prisoners to use JPay/GTL during their 7-day yard break, but the relevant policies have not changed since the time period alleged in the complaint. The yard-break provision in Policy Directive 03.03.105 has not changed since 2012. The 2012 version of that provision, which is available at Archive.org, is identical to the most recent version. *See* MDOC Policy Directive 03.03.105 ¶ QQQ (Apr. 9, 2012), available at https://web.archive.org/web/20140101041616/http://www.michigan.gov/documents/corrections/0303105_382060_7.pdf; *see also Distributorsoutlet.com, LLC v. Glasstree, Inc.*, No. 11-CV-6079, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (noting that "courts have taken judicial notice of the contents of web pages available through [Archive.org] as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned under Federal Rule of Evidence 201"). Similarly, the most recent version of Policy Directive 04.05.120 became effective on September 27, 2010. *See* https://www.michigan.gov/documents/corrections/0405120_621995_7.pdf. Thus, it has not changed during the relevant time period, either.

Accordingly, to the extent Plaintiff claims that he was deprived of due process because he did not receive proper notice that he would lose his telephone and kiosk privileges, he does not state a claim because the very policies that he relies upon in his complaint gave him that notice before he was found guilty of his misconducts. For all the foregoing reasons, therefore, Plaintiff does not state a due process claim.

VI.     Equal Protection

Plaintiff contends that Defendants discriminated against him, denying him his right to equal protection. He contends that he is being treated differently from other prisoners with LOP status. According to Plaintiff, other prisoners serving a long-term LOP sanction are able to use

13

the telephone when they are given access to the yard during their 7-day yard break. On the other hand, Plaintiff also contends that Defendants Davis, Christiansan, and Barber are "cracking down on every[one] with [LOP] and permane[n]tly turning off their pin-codes to their phones, so [their] phones don't work[.]" (Compl., PageID.8.) In addition, when Plaintiff told Defendant Davis that other prisoners on LOP status could use the telephone during their 7-day yard break, she told him, "[W]ell when we find out who they are they won't be making calls either." (*Id.*)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to access telephone and electronic messaging services under the Constitution, especially where other means of communication with family and friends are available.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary

discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's allegations are conclusory. They do not permit a reasonable inference that any Defendant intentionally treated Plaintiff differently from a similarly-situated prisoner. To be similarly-situated, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'" *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff does not allege that any Defendant treated him differently from another prisoner with a similar history of misconduct.

If anything, it appears that any disparity in access to telephone and kiosk privileges was unintentional. MDOC policy is clear about the privileges that are lost as a result of a LOP sanction, and Defendants repeatedly informed Plaintiff that they were following policy for LOP status. Even though some prisoners were able to use the telephone while on LOP status, Defendants apparently took action to change that when they became aware of it. These allegations suggest that other prisoners on LOP status were able to use the telephone due to the negligence of prison officials responsible for deactivating prisoner accounts. They do not suggest that Defendants intentionally and arbitrarily singled Plaintiff out for different treatment.

Plaintiff also contends that Defendants were discriminating against him on account of his mental illnesses, because his mental illnesses are part of the reason for his LOP sanctions. He contends that, for a period of time before August 2016, he was not being properly treated for

15

these illnesses, and during that time he accumulated LOP sanctions because he had behavioral problems. After he started receiving proper treatment, his behavior improved. Nevertheless, Plaintiff does not allege that he was treated differently from any other similarly-situated inmate with behavioral problems stemming from mental illness. Thus, for all the foregoing reasons, Plaintiff does not state an equal protection claim.

VII. Retaliation

In addition, Plaintiff contends that Defendants Davids, Davis, and McQuiston have retaliated against him for exercising his First Amendment rights. Defendants Davids and Davis allegedly stopped approving Plaintiff's requests for LOP waivers in October 2018, the month after he served a court complaint on them. He received waivers in August and September 2018, but in November 2018, McQuiston told Plaintiff that Davids and Davis would no longer grant his waiver requests.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court finds that Plaintiff's allegations are sufficient to state a retaliation claim against Defendants Davids and Davis. However, they are not sufficient to state a claim against

16

McQuiston. Only Davis and Davids are alleged to have taken an adverse action against Plaintiff by refusing to grant Plaintiff's waiver requests. McQuiston merely informed Plaintiff of their decision. McQuiston is not responsible for the actions of Davids and Davis. Thus, Plaintiff does not state a retaliation claim against McQuiston.

VIII. Access to the Courts

In various places throughout the complaint, Plaintiff asserts that Defendants have deprived him of access to the courts. Plaintiff is apparently referring to the fact that Defendants Davids and Davis reacted to his court complaint by refusing to approve further requests for LOP waivers.

Defendants' actions did not deprive Plaintiff of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, Plaintiff must plead and demonstrate that Defendants' actions, or shortcomings in the prison's services,

have hindered, or are presently hindering, Plaintiff's efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff has not alleged "actual injury." He does not allege that Defendants have hindered or caused any injury to a legal claim. As this case demonstrates, access to the telephone and the prison kiosk are not necessary for Plaintiff to pursue legal action. Accordingly, Plaintiff fails to state an access-to-the-courts claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff states a retaliation claim against Defendants Davids and Davis. He fails to state any other claim against any other Defendant. Accordingly, Defendants Smith, J. Christiansan, Schiebner, Miniard, Barber, Thurlby, Larsen, Clemens, Luther, Matthews, McQuiston, D. Christiansan, and Karber will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated: __January 16, 2019__  /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE